**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-3315

_____

JOBANPREET SINGH,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA

_____

On Petition for Review of a Final Order of the
Board of Immigration Appeals
(No. A208-794-978)
Immigration Judge: Annie S. Garcy

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 14, 2023

Before: JORDAN, BIBAS, and PORTER, *Circuit Judges*

(Filed: September 26, 2023)

_____

OPINION*

_____

BIBAS, *Circuit Judge*.

Jobanpreet Singh, a Sikh from Punjab, India, belonged to the People's (Aam Aadmi)

Party. Three times, supporters of rival political parties confronted him for supporting the

_____

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding
precedent.

wrong party. The first time, five fellow students called him a traitor to Sikhs for supporting the People's Party, so they beat him, bloodying his nose and lips. After his parents reported the beating, village councillors made the attackers apologize publicly to Singh.

Five months later, a group of youths pushed him off the back of a bus for the same reason, scraping up his forehead, arms, and knees. Singh was scared and did not report that attack to the police.

And eight months after that, ten supporters of rival parties showed up at his home, called his family traitors, and beat him and his cousin, bruising and cutting them. Police responded and came to his home but never arrested or prosecuted anyone for the beating.

So Singh came to the United States on a six-month visa, falsely claiming that he was a karate expert. Two years later, the U.S. government started proceedings to remove him from the country. He admitted that he was removable but applied for asylum, withholding of removal, and protection under the Convention Against Torture.

The immigration judge denied his applications. As she noted, Singh did not argue that his assailants were public officials, but rather supporters of a rival party. And he did not bear his burden of proving that the government was unable or unwilling to control his attackers. On the contrary, whenever the authorities were called, they responded properly. Singh appealed the denials of asylum and withholding but not protection under the Convention. The Board of Immigration Appeals affirmed and dismissed his appeal.

Singh now petitions for review. But he failed to exhaust two issues below: He never appealed the immigration judge's denial of his Convention claim. And he never argued or presented evidence to the agency, as he now suggests in passing, that his attackers "were

affiliated with the government" or were acting "under the instruction of government officials." Pet'r's Br. 11–12; *see* 8 U.S.C. § 1252(d)(1) (statutory exhaustion requirement). The only issue that he has preserved and raised is that the Indian government was supposedly unable or unwilling to control the private actors who attacked him.

We review the Board's decision for substantial evidence, treating the agency's findings of fact as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." § 1252(b)(4); *see Galeas Figueroa v. Att'y Gen.*, 998 F.3d 77, 91 (3d Cir. 2021). Substantial evidence showed that Indian officials were able and willing to stop the attacks.

When they were called, government authorities responded to the private violence. After the first attack, village councillors summoned the assailants (as well as their parents) and forced them to apologize. After the third one, police came to Singh's house. Their failure to track down, arrest, and prosecute the perpetrators does not prove that they were unable or unwilling to do so. (Police can be able and willing to solve crimes and bring criminals to justice even though they sometimes fail to do so.) And Singh never reported the second attack, so the government's failure to respond tells us nothing.

In response, Singh cites various human-rights reports about conditions in India. But none is apt. The reports' generalized concerns about officials' unaccountability, police shortages, lax law enforcement, demands for bribes, crowded dockets, pretrial detention, coerced confessions, and sedition and hate-speech prosecutions are unrelated to Singh and the facts of his case.

Substantial evidence in the record shows that the Indian government was able and willing to control the private actors who attacked Singh. So the Board properly affirmed the denial of asylum and withholding of removal. We will thus deny his petition for review.